IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRCT OF TENNESSSEE

TRUSSCRAFT, LLC,

    Plaintiff,

vs.

FIDELITY NATIONAL PROPERTY
& CASUALTY INSURANCE COMPANY,
and LIG INSURANCE AGENCY, INC.

    Defendants.

No. _____
JURY DEMANDED

## COMPLAINT

COMES NOW the Plaintiff, Trusscraft, LLC (hereafter "Trusscraft"), by and through counsel, and for its claims against the Defendants, Fidelity National Property & Casualty Insurance Company and LIG Insurance Agency, Inc. (collectively hereafter "Defendants"), would respectfully state and show unto the Court as follows:

### PREFACE

"If the crafty conditions with which fire insurance companies fence in the rights of the assured, and the subtle argument which their counsel found upon them, were always to prevail, these corporations would be reduced almost to the single function of receiving premiums for little or no risk." *Appleton Iron Co. v. British Am. Assur. Co.*, 1 N.W. 9 (Wis. 1879).

### PARTIES AND JURISDICTION

1.    Plaintiff, Trusscraft, LLC is a Tennessee Limited Liability Corporation. At all times relevant hereto, Trusscraft's principal office was located at 1035 Graham Road, Ashland City,

1

Cheatham County, Tennessee 37015 and owned the real property and improvements located at said location (hereafter the "Insured Premises").

2. At all times relevant hereto, Defendant Fidelity National Property & Casualty Insurance Company (hereafter "Fidelity") was a foreign insurance company licensed to participate in the general casualty insurance business and flood insurance business through the National Flood Insurance Program within the state of Tennessee. Fidelity's principal office is located in Jacksonville, Florida. At all times relevant hereto, Fidelity conducted and transacted business in Cheatham County, Tennessee and continues to conduct and transact business in Cheatham County, Tennessee.

3. At all times relevant hereto, Defendant LIG Insurance Agency, Inc. was a foreign corporation engaged in the insurance business in the state of Tennessee. LIG Insurance Agency, Inc., together with its authorized agents and employees, will hereafter be referred to as "LIG". LIG's principal office is located in Missouri and maintains regional offices around the country. At all times relevant hereto, LIG conducted and transacted business in Cheatham County, Tennessee, and continues to conduct and transact business in Cheatham County, Tennessee. At all times herein, LIG's agents and employees, including, but not limited to, Tina Myers, were acting within the course and scope of their employment with LIG.

4. This Complaint originates as the result of the May 2, 2010 flood that severely damaged Plaintiff's property located on the Insured Premises, causing a loss to the Insured Premises, as well as the personal property, inventory, and other contents located thereon.

5. This Court has subject matter jurisdiction under *28 U.S.C. § 1331, 42 U.S.C. § 4072*, and the insurance policy at issue in this case, and supplemental jurisdiction under *28 U.S.C. § 1367*.

Venue is proper because the alleged acts in this lawsuit occurred in this judicial district and/or because the Defendants conduct business in this judicial district.

## FACTUAL BACKGROUND

### Relationship Between Fidelity and LIG

6. Upon information and belief, at all times relevant hereto, Fidelity and LIG were parties to an Agency Agreement, by virtue of which LIG was authorized by Fidelity to: (a) solicit, receive and transmit to Fidelity proposals for insurance contracts; (b) bind and execute insurance contracts; (c) maintain existing insurance contracts and solicit renewal insurance contracts; and (d) provide all usual and customary services of an insurance agent on insurance contracts placed by LIG with Fidelity.

7. LIG was an authorized agent of Fidelity, and Fidelity may be held vicariously liable for the wrongful acts of LIG.

8. Pursuant to Tenn. Code Ann. § 56-6-115(b), "an insurance producer who solicits or negotiates an application for insurance shall be regarded, in any controversy arising from the application for insurance or any policy issued in connection with the application between the insured or insured's beneficiary and the insurer, as the agent of the insurer and not the insured or insured's beneficiary." The purpose of Tenn. Code Ann. § 56-6-115(b) is to prevent an insurance company from denying responsibility for the representations and actions of its agent from whom an application for insurance is voluntarily accepted and to protect an applicant who relies on such representations and actions of the insurer's agent. The statute is liberally construed in the insured's favor. *Bill Brown Construction Co., Inc. v. Glen Falls Ins. Co.*, 818 S.W.2d 1, 4 (Tenn. 1991).

3

9. LIG is an insurance producer who solicited and negotiated the applications for insurance as Fidelity's agent under Tenn. Code Ann. § 56-6-115(b).

10. At all times material hereto, LIG employed certain individuals, including but not limited to Myers, for the purposes of soliciting insurance products, collecting premiums, receiving applications, binding coverage, etc.

11. LIG was controlled in its actions by Fidelity to the extent it was governed by the Agency Agreement between it and Fidelity.

12. LIG has Fidelity's authority to receive applications for, and on behalf of, Fidelity.

13. LIG was entrusted by Fidelity to collect the premium for the insurance contracts solicited by them.

14. LIG was entrusted by Fidelity to bind coverage on behalf of Fidelity.

### The Insurance Policies Issued to Trusscraft

15. Trusscraft and Defendants were in a contractual relationship as customers and service/insurance providers, in which Defendants agreed to provide Trusscraft with professional services and adequate and appropriate insurance coverage. Trusscraft, in turn, promised to pay for such services and coverage.

16. In the Fall of 2004, Trusscraft asked LIG to procure flood insurance for three (3) buildings located at the Insured Premises. This resulted in three separate SFIP's issued by Fidelity to Trusscraft. The policy numbers issued for these properties were Policy No. 41 2510192047, Policy No. 41 2510192045, and Policy No. 41 2510192046.

17. In early 2007, Trusscraft asked LIG to increase the amount of coverage on certain of the structures and to make additional changes to the three issued policies. Trusscraft also requested that LIG procure flood insurance for two (2) additional buildings located on the Insured

4

Premises. This resulted in two new policies issued by Fidelity, bearing Policy Nos. 41 2510257642 and 41 2510257641.

18. With regard to Trusscraft's requested changes to Policy No. 41 2510192047 in early 2007, Trusscraft requested that the previous Building limits remain at $441,500.00 but that contents coverage be added in the amount of $500,000.00. LIG agreed to make the change as requested, and Trusscraft paid an additional premium as directed by LIG.

19. With regard to Trusscraft's requested changes to Policy No. 41 2510192046 in early 2007, Trusscraft requested that LIG reduce the previous Building limits of $164,800 to $50,000.00 and requested contents coverage to be added in the amount of $400,000.00. LIG agreed to make the changes as requested, and Trusscraft paid an additional premium as directed by LIG.

20. With regard to Trusscraft's requested changes to Policy No. 41 2510192045 in early 2007, Trusscraft requested that LIG increase the previous Building limits of $52,800.00 to $200,000 and requested no contents coverage. LIG agreed to make the changes as requested, and Trusscraft paid an additional premium as directed by LIG.

21. Endorsement Transmittal forms related to each policy indicate the requested changes were received by Fidelity from LIG in February of 2007, and that Defendants agreed to provide the additional coverage requested by Trusscraft. Again, Trusscraft paid the additional premium on each of the five (5) policies which reflected the additional coverage and changes in coverage requested by Trusscraft.

22. Trusscraft reasonably believed and relied on Defendants' representations that it had been provided the additional coverages under the Policies as had been requested.

5

Case 3:11-cv-00413   Document 1   Filed 05/03/11   Page 5 of 20 PageID #: 5

## The Loss

23. On or about May 2, 2010, a flood caused damage to various insured structures at the Insured Premises which ultimately led to significant damage to a large portion of the Insured Premises. Certain business personal property, inventory, and other contents located on or about the Insured Premises were also damaged or destroyed (hereafter the "Loss"). All damage for which recovery is sought herein was caused by covered causes of loss pursuant to the Policies.

24. The Loss was promptly reported to Defendants.

25. All five insurance policies, being Policy Nos. 41 2510192047, 41 2510257642, 41 2510257641, 41 2510192046, and 41 2510192045 (the "Policies"), were in full force and effect on May 2, 2010.

26. Trusscraft fulfilled all of the duties after the Loss that were imposed upon it by the Policies to the satisfaction of Fidelity.

27. Trusscraft fulfilled all duties imposed upon it under the Policies. Furthermore, Trusscraft mitigated its damages to the extent possible and acted reasonably at all times material hereto.

## The Denial and Refusal to Pay

28. Despite the fact that Trusscraft has fulfilled all duties imposed upon it by Fidelity and the damage to the Insured Premises is a result of a covered cause of loss, Fidelity has wrongfully denied the Trusscraft's claim for insurance proceeds under Policy No. 41 2510257641. Further, while Fidelity has not denied Trusscraft's claim for insurance proceeds under the other four (4) policies, Fidelity has not paid the full amount of Trusscraft's loss that it is entitled to under the policies.

29. In addition to the amounts owed by Fidelity under Policy No. 41 2510257641, Trusscraft is entitled to the following amounts under the other four (4) policies in addition to what has already been paid by Fidelity:

- Policy No. 41 2510192047 - $134,379.08
- Policy No. 41 2510257642 - $117,434.21
- Policy No. 41 2510192046 - $374,431.37
- Policy No. 41 2510192045 - $56,657.05

30. Fidelity's refusal to pay Trusscraft the amounts owed to it as a result of the Loss is without justification and constitutes a breach of contract, all as set forth more fully above and below.

31. Fidelity's refusal to pay the money and benefits due and owing Trusscraft under the Policies has caused Trusscraft to seek legal counsel and to initiate this litigation to recover the insurance proceeds to which it is entitled.

32. The alleged basis for Fidelity's denial of Trusscraft's claim under Policy No. 41 2510257641 was that the building insured under the Policy was uninsurable because it did not meet the definition of a building as defined by the Policy. Thus, Defendants failed to procure the coverage requested by Trusscraft and promised by LIG related to the building insured under Policy No. 41 2510257641.

33. As to Policy No. 41 2510192046, Trusscraft was advised by Defendants that the Insured Premises and contents located therein pursuant to Policy No. 41 2510192046 had not been insured as Trusscraft had requested. In early 2007, Trusscraft requested that LIG reduce the previous Building limits of $164,800 to $50,000.00 and requested contents coverage to be added

7

Case 3:11-cv-00413   Document 1   Filed 05/03/11   Page 7 of 20 PageID #: 7

in the amount of $400,000.00. Instead, the coverage under the Policy reflected coverage limits for the building of $164,800.00 and coverage limits for contents of $50,000.00.

34. At all times before the Loss, Trusscraft reasonably relied on Defendants' representations and reasonably concluded that it had been provided with the requested insurance coverage.

35. In actuality, however, Defendants neglected to implement the changes to Trusscraft's Policy No. 41 2510192046, as had been requested, thereby leaving Trusscraft without adequate insurance coverage. If Trusscraft had known prior to the Loss that Defendants had not provided the coverage requested, Trusscraft would have taken the steps necessary to ensure the implementation of appropriate coverage.

36. After LIG learned that the requested coverage under Policy No. 41 2510192046 had not been procured, it contacted Fidelity in an attempt to resolve the issue. Daniel Reale of Fidelity responded to Tina Myers of LIG via email and admitted that Fidelity made a mistake in failing to properly change the policy limits as requested and stated that it was a result of "human error".

37. On December 17, 2010, LIG wrote Fidelity and demanded that the policy be reformed to provide the requested coverage and to reflect the true intention of the parties. Fidelity has refused. *See* letter from LIG to Fidelity attached as **Exhibit "A"**.

38. Defendants' failure to implement Trusscraft's requested policy changes and to provide Trusscraft with the requested coverage has left Trusscraft substantially underinsured.

39. Defendants' conduct, as discussed in detail above and below, falls significantly below the professional standards of service that Defendants had promised to provide to Trusscraft and for which Trusscraft, as a customer, had paid.

8

Case 3:11-cv-00413  Document 1  Filed 05/03/11  Page 8 of 20 PageID #: 8

40. Fidelity's refusal to pay the full amount of coverage that Trusscraft had requested and failure to provide the agreed-upon coverage increases has caused Trusscraft to seek legal counsel and to initiate this Complaint to recover the amounts to which they are entitled.

41. Defendants have refused to provide Trusscraft with a reasonable or justifiable basis for failing to pay Trusscraft the full amount to which they are entitled for their damage occasioned by the Loss pursuant to the terms of the Policies and/or misrepresenting the coverage provided to Trusscraft under the Policies.

42. Defendants' failure to pay to Trusscraft the amount owed for covered losses and/or to provide the agreed upon increase in coverage under the Policies is without justification.

43. Defendants' refusal to pay the money and benefits that would have been due and owing to Trusscraft had Defendants not negligently misrepresented the availability of flood coverage has caused Trusscraft to seek legal counsel and to initiate this Complaint to recover the insurance proceeds to which they would have otherwise been entitled.

44. As a direct and proximate cause of Defendants' actions/inactions, Trusscraft has sustained substantial compensable losses.

45. The knowledge of LIG is imputed to Fidelity. Because Fidelity acted within the scope of its authority, LIG's acts, mistakes, negligence and representations are deemed those of its principal, Fidelity. Fidelity cannot void the policies or refuse to provide the requested coverage and avoid liability based on mistakes, negligence, and misrepresentations made by its own agent, LIG.

46. As a direct and proximate cause of Defendants' actions/inactions, Trusscraft has sustained substantial compensable losses, including all benefits due Trusscraft under the Policies,

loss of credit, lost profits, loss of insurability, and other numerous and assorted incidental and consequential damages.

47. Trusscraft would show to the Court that it justifiably relied upon the skill, expertise and experience of Fidelity's agent, LIG, concerning the scope of the Policies and requested changes, and as a direct and proximate cause of the negligence of LIG and Fidelity, has now been exposed to uninsured losses.

## CAUSES OF ACTION

### Count I – Reformation of Policy

48. Trusscraft reasserts and re-alleges Paragraphs 1 through 47 of this Complaint as if set forth verbatim herein.

49. Reformation of a contract is an equitable remedy applicable to insurance contracts where there is a mutual mistake of the parties. Trusscraft invokes this Court's equitable powers and seeks reformation of Policy Nos. 41 2510257641 and 41 2510192046 issued by Fidelity to Trusscraft.

50. The remedy of reformation is necessary to carry out the true intent of the parties. Trusscraft sought complete insurance coverage, including flood coverage. Defendants do not, or at least should not, dispute that Trusscraft desired flood coverage under Policy No. 41 2510257641 and increased coverage under Policy No. 41 2510192046 and that Defendants would have provided flood coverage and the requested increased coverage but for the mistake and negligence of LIG and Fidelity. Defendant LIG's knowledge, admission, and negligence is imputed to Fidelity. There was a meeting of the minds, but the Policies do not express what was intended and desired by the parties in that the building insured by Policy No. 41 2510257641 is, according to Fidelity, not insurable under the policy, and that the limits of coverage in Policy No.

10

41 2510192046 do not reflect the agreement of the parties. There was a mistake in the issuance of the Policies which rendered the terms of the Policy different from those desired by the parties. Accordingly, the Policies should be reformed to include coverage, and in the amounts requested by Trusscraft, specifically as it relates to the Trusscraft's claim at issue involving flood damage to their property.

**Count II – Failure to Procure**

51. Trusscraft reasserts and re-alleges Paragraph 1 through 50 of this Complaint as if set forth verbatim herein.

52. LIG is liable to Trusscraft for failure to procure the flood insurance coverage requested by Trusscraft as it relates to Policy Nos. 41 2510257641 and 41 2510192046 issued by Fidelity to Trusscraft.

53. LIG agreed and undertook to obtain flood insurance policies for Trusscraft.

54. Policy Nos. 41 2510257641 and 41 2510192046 have been contested and/or coverage has been denied due to the acts and/or omissions of LIG.

55. Trusscraft contracted with LIG to procure insurance policies and reasonably relied upon LIG, based upon LIG's expertise, to successfully complete the groundwork for procuring the policies.

56. LIG's failure to procure the requested insurance was the cause in fact, legal, and proximate cause of Trusscraft's damages.

57. As a result of LIG's failure to procure the requested insurance, Trusscraft has suffered property loss, personal property loss, business personal property loss, and loss of inventory and have incurred and are continuing to incur, other numerous incidental and consequential damages.

11

## Count III - Negligence And/Or Negligent Misrepresentation

58. Trusscraft reasserts and re-alleges Paragraphs 1 through 57 of this Complaint as if set forth verbatim herein.

59. Defendants, and each of them, are liable to Trusscraft for negligence and/or negligent misrepresentation.

60. LIG provided insurance agent services to Trusscraft. Trusscraft looked to LIG to obtain the insurance coverage it sought and needed to protect itself from property losses caused by flood. Trusscraft expected that it was being provided insurance coverage by a sound company who could and would properly and promptly pay and honor claims when they are made. It was LIG's duty to keep Trusscraft fully informed and advised so that Trusscraft was safely insured at all times. In exchange, LIG was paid for its services. Trusscraft relied on the representations and promises of Defendants, no matter whether express or implied, concerning the nature of the insurance coverage being provided, namely that the Policies would provide flood insurance coverage for the structures and contents insured by all five policies issued to Trusscraft, and with the policy limits at the level requested by Trusscraft. Defendants knew that their representations concerning the coverage would induce Trusscraft to rely on such representations and justice can only be avoided by enforcement of the representations and agreement that coverage for claims for flood coverage with policy limits at the level requested by Trusscraft be included in the Policies. LIG further held itself out as competent and qualified in its field of expertise (insurance), and Trusscraft relied on LIG's competency to its ultimate detriment.

61. In providing the aforementioned services to Trusscraft, LIG was acting within the ordinary course of its business as agent of Fidelity.

62. Defendants owed Trusscraft a duty: (1) to insure adequate insurance coverage based on Trusscraft's needs and requests, (2) to counsel and guide Trusscraft regarding its insurance needs, (3) to act with reasonable care and diligence in securing insurance coverage for Trusscraft, (4) to explain to Trusscraft any exclusions contained in policies solicited and obtained on Trusscraft's behalf; and (5) to act as a reasonably prudent insurance agent and insurance company. It is the universal rule that an agent or broker of insurance who is compensated for his services and undertakes to procure insurance for another and unjustifiably fails, will be held liable for any damages resulting. Moreover, in Tennessee, an insurance agent employed to maintain insurance coverage for a client may be held liable on a negligence theory if the agent fails to use reasonable care and diligence in renewing or maintaining an insurance policy.

63. Defendants breached each of the above duties.

64. Defendants promised to provide Trusscraft full and appropriate flood insurance coverage, and with policy limits as requested by Trusscraft, and Trusscraft justifiably and reasonably relied on Defendants' representation, skill and expertise to its detriment.

65. Additionally, Defendants were negligent in failing to adequately train and supervise their employees/agents. Specifically, Fidelity was negligent in failing to adequately train and supervise LIG and also its own employees. Additionally, LIG was negligent in failing to adequately train and supervise its employees.

66. Defendants' negligence was the cause in fact, legal and proximate cause of Trusscraft's damages.

67. As a result of Defendants' negligence and/or negligent misrepresentation, Trusscraft has suffered substantial damages.

13

Case 3:11-cv-00413 Document 1 Filed 05/03/11 Page 13 of 20 PageID #: 13

## Count IV– Breach of Contract

68. Trusscraft reasserts and re-alleges Paragraphs 1 through 67 of this Complaint as if set forth verbatim herein.

69. LIG and/or Fidelity are liable to Trusscraft for breach of contract.

70. <u>Breach of Contract No. 1.</u> The Policies (as reformed in the case of Policy Nos. 41 2510257641 and 41 2510192046) issued by Fidelity are binding contracts, and are supported by valid consideration.

71. Fidelity is in total, material breach of the Policies, and Fidelity is liable to Trusscraft in the maximum amount allowed by the Policies for the Loss. Specifically, Fidelity's breach of contract includes the following, without limitation:

    A.    Fidelity's failure and refusal to pay the amounts owed to Trusscraft under the "Building" coverage afforded by the Policies;

    B.    Fidelity's failure and refusal to pay the amounts owed to Trusscraft under the "Contents" coverage afforded by the Policy;

    C.    Fidelity's failure and refusal to pay such other amounts to Trusscraft as may be required by the Policies.

72. As a result of Fidelity's breach of contract, Trusscraft sustained substantial compensable losses for the amounts claimed under the Policies, plus interest thereon, as well as money damages for economical losses, including, loss of income due to damaged business property, inventory, and other numerous and assorted incidental and consequential damages.

73. <u>Breach of Contract No. 2.</u> Trusscraft contracted with Defendants to provide adequate and full insurance against perils, including flood, causing property and personalty losses. Although LIG did in fact obtain Trusscraft policies of insurance with Fidelity, Policy No. 41 2510257641

14

was insufficient to cover Trusscraft's losses in the event of a loss from flooding, according to Fidelity, despite Trusscraft's specific request that this building be insured against flood damage. Further, although LIG did in fact obtain Trusscraft policies of insurance with Fidelity, Policy No. 41 2510192046 did not reflect the coverage limits requested by Trusscraft. As a result, LIG and/or Fidelity are in total, material breach of their contract with Trusscraft to procure appropriate insurance coverage for the benefit of Trusscraft, for which valuable consideration was paid.

74. As a result of LIG and/or Fidelity's breach of contract, Trusscraft has suffered property loss, contents loss, and have incurred and are continuing to incur other numerous incidental and consequential damages.

75. <u>Breach of Contract No. 3.</u> Fidelity is also liable to Trusscraft for its breach of the Policy Nos. 41 2510257641 and 41 2510192046 in that Fidelity denies that it is responsible for the damages incurred by Trusscraft during the May 2010 flood and up to the amount of coverage requested by Trusscraft.

76. Any contractual provision in a policy of insurance may be waived by an officer or agent of the insurer who has actual or apparent authority to do so. It is firmly established in Tennessee jurisprudence that an insurance company, by its agent's conduct, may be estopped to deny a waiver of provisions inserted in an insurance policy for the benefit of the company. In this case, Policy No. 41 2510257641 issued to Trusscraft did not provide coverage to the insured property, according to Fidelity, through the mistake or negligence of Defendants.

77. Trusscraft relied on the representations of Defendants concerning the nature of the insurance coverage being provided. Defendants knew that their representations concerning the availability of flood coverage would induce Trusscraft to rely on such representations. Injustice

can only be avoided by enforcement of Trusscraft's request that coverage be provided under the Policy.

78. Fidelity waived their defense to the claim for coverage under the Policy through the acts, representations, and knowledge of Defendants, and therefore has breached the Policy by denying that it is responsible to indemnify Trusscraft for their losses.

79. As a result of Defendants' breach of contract, Trusscraft has suffered monetary losses, and other numerous incidental and consequential damages, for which Defendants are liable.

**Count V – Violations of the Tennessee Consumer Protection Act**

80. Trusscraft reasserts and re-alleges Paragraphs 1 through 79 of this Complaint as if set forth verbatim herein.

81. Fidelity is a foreign corporation engaged in the business of issuing insurance policies, including flood policies, in the ordinary course of its business.

82. LIG is engaged in the business of providing insurance services in the ordinary course of its business and is engaged in the business of soliciting insurance consumers to purchase insurance and advising insurance consumers concerning their insurance needs.

83. Trusscraft is a consumer within the meaning as contemplated by the Tennessee Consumer Protection Act. Trusscraft was a consumer of the insurance services and advice and other services provided by Defendants.

84. Defendants engaged in unfair and deceptive acts or practices which violate the Tennessee Consumer Protection Act, as codified at T.C.A. § 47-18-101, *et seq.* Defendants' unfair and deceptive acts or practices are in violation of T.C.A. § 47-18-104(a)-(b).

85. Specifically, the unfair and deceptive practices in which Defendants engaged include, but are not limited to, the following:

a. Defendants' unfair, deceptive, reckless and/or grossly negligent failure to implement Trusscraft's requested changes to Policy No. 41 2510192046, which was to the benefit of Defendants and the detriment of Trusscraft;

b. Defendants' unfair, deceptive, reckless, and/or grossly negligent failure to implement Trusscraft's requested insurance coverage in Policy Nos. 41 2510257641 and 41 2510192046;

c. Defendants' unfair, deceptive, reckless and/or grossly negligent failure to properly maintain the requested flood insurance and coverage limits requested by Trusscraft necessary to protect Trusscraft from uninsured losses;

d. Defendants' unfair and deceptive holding itself out to Trusscraft as being knowledgeable and competent regarding insurance matters, including flood insurance, when it knew or should have known that it was not knowledgeable and competent regarding the availability and scope of flood insurance;

e. LIG's unfair and deceptive misrepresentations to Trusscraft concerning the availability of flood insurance at the Insured Premises;

f. Defendants' unfair and deceptive false representations to Trusscraft the amount of coverage afforded by the Policies, on which Trusscraft relied to its detriment and to Defendants' benefit;

g. Defendants' unfair and deceptive failure to fully inform Trusscraft of its rights and obligations with respect to the additional coverage requested by Trusscraft and promised by Defendants.

h. Defendants' unfair, deceptive, reckless and grossly negligent failure to reform Policy No. 41 2510192046 with knowledge that the policy should be reformed as evidenced by the December 17, 2010 letter from LIG to Fidelity.

i. Defendant LIG's unfair, deceptive, reckless and/or grossly negligent failure to advise Trusscraft of exclusions in the Policies;

j. Defendants' unfair and deceptive grossly negligent actions as set forth above in this Complaint; and

k. Defendant Fidelity's unfair and deceptive denial of benefits for insured losses when it knew that coverage should be provided.

86. Defendants' acts and representations to Trusscraft led it to believe that it was eligible for flood insurance on the Insured Premises, and that coverage was afforded to Trusscraft in the amounts requested by Trusscraft.

87. Defendants' unfair and deceptive acts and representations to Trusscraft caused substantial injury to Trusscraft, which was not reasonably avoidable by Trusscraft.

88. Defendants' unfair and deceptive acts and practices were willful and knowing, within the meaning as contemplated by Tennessee jurisprudence.

89. As a result of Defendants' violations of the Tennessee Consumer Protection Act, Trusscraft has suffered ascertainable losses, plus treble damages, attorney's fees, and costs, for which Defendants are liable.

**Count VI – Promissory Estoppel**

90. Trusscraft reasserts and re-alleges Paragraphs 1 through 89 of this Complaint as if set forth verbatim herein.

18

91. Defendants made a clear and unambiguous promise to provide flood insurance for the structure insured by Policy No. 41 2510257641.

92. Trusscraft justifiably relied upon said promise, paid premiums associated with the policy, and reasonably and justifiably understood that the structure and contents were insured for flood losses.

93. Trusscraft's reliance on said promise was reasonable and foreseeable.

94. Trusscraft relied on said promise to its detriment and have suffered substantial compensable losses as a result thereof, all of which was foreseeable.

WHEREFORE, as a result of the foregoing, Trusscraft would respectfully request that proper process be issued and served on the Defendants requiring them to answer or otherwise respond in the time period allotted by law, that Trusscraft be granted a trial by jury, and that this Honorable Court award a judgment against the Defendants as follows:

A. For compensatory damages against Defendants not to exceed $1,000,000.00;

B. For reformation of the Policy to include the coverages and amounts requested by Trusscraft;

C. For specific performance of the Policy as reformed;

D. For treble damages and attorney's fees against Defendants under the Tennessee Consumer Protection Act;

E. For all costs incurred as a result of this action;

F. For prejudgment interest; and

G. For such other further and general relief as this Court deems just and equitable.

Respectfully submitted,

GILBERT RUSSELL MCWHERTER PLC


*/s/ J. Brandon McWherter*
J. BRANDON MCWHERTER #21600
CHAD A. NAFFZIGER #26880
*Attorneys for Plaintiff*
101 N. Highland
Jackson, Tennessee 38301
Telephone: (731) 664-1340
Fax: (731) 664-1540
bmcwherter@gilbertfirm.com
cnaffziger@gilbertfirm.com

20